IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ESTHER CHENAULT, on behalf of herself and those similarly situated, | ) ) ) |
| Plaintiff, | ) NO. 3:22-cv-00637 ) |
| v. | ) JUDGE CAMPBELL ) MAGISTRATE JUDGE FRENSLEY |
| HARTWIG TRANSIT, INC., ET AL., | ) ) |
| Defendants. | ) |

# MEMORANDUM

Pending before the Court is Plaintiff Esther Chenault's ("Chenault") Motion for Court-Supervised Notice to Potential Plaintiffs (Doc. No. 49). Defendants Hartwig Transit, Inc. ("Hartwig") and McCormick Trucking, Inc. ("McCormick" and collectively with Hartwig, the "Defendants") filed a response in opposition (Doc. No. 50), and Chenault filed a reply (Doc. No. 51). For the reasons discussed below, the motion will be **GRANTED** in part and **DENIED** in part.

## I. FACTUAL BACKGROUND

Defendants are trucking companies that employ dispatchers, lead dispatchers, and other employees who monitor the progress of trucks and maintain communications with truck drivers. (Doc. No. 49 at PageID # 253-254). Plaintiff Esther Chenault ("Chenault") was employed as a dispatcher at Hartwig from February 17, 2020 through September 13, 2021, and again from December 8, 2021 until April 14, 2022. (*Id.* at PageID # 254). Chenault brings this collective action against Defendants on behalf of herself and other former and current employees of Defendants for alleged wage and hour violations under the Fair Labor Standards Act ("FLSA"). Chenault alleges that Defendants "failed to pay certain hourly employees statutorily-mandated overtime wages for hours worked in excess of forty per week; and automatically deducted a 30-minute lunch period

from certain hourly employees even when they did not take a lunch period, and then failed to pay those employees statutorily-mandated overtime wages for hours worked in excess of forty per week, including those hours improperly deducted for lunch." (*Id.* at PageID # 252). Chenault states that she is similarly situated to potential collective members because they were each subjected to a unified policy of wage and hour violations, the violations accrued at around the same time and in the same approximate manner, and they share similar positions. (*Id.* at PageID # 252-253). Chenault has moved the Court to issue court-supervised notice to the following individuals:

> Collective Action Subclass 1 ("Straight Time FLSA Collective"): all dispatchers employed by Defendant Hartwig Transit, Inc. ("Hartwig") who were paid their regular hourly rates of pay instead of the statutory overtime rate of pay for any hours they may have worked over 40 in any workweek during the three years preceding the date of the filing of the Complaint (referenced in Plaintiff's Complaint and Jury Demand as the "Straight Time Collective").
>
> Collective Action Subclass 2 ("Lunch Break FLSA Collective"): all hourly employees (other than drivers, driver's helpers, loaders, or mechanics whose duties affect the safety of operation of motor vehicles in transportation on public highways in interstate or foreign commerce) of Hartwig Transit, Inc. and McCormick Trucking, Inc., including but not limited to Dispatchers and Lead Dispatchers, who: (1) have worked more than 40 hours in a week, and (2) have had a lunch period automatically deducted from their hours worked when they did not take a lunch period; and (3) who were paid their regular hourly rates of pay instead of the statutory overtime rate of pay for any hours worked over forty, including those lunch hours that were improperly deducted, in any workweek during the three years preceding the date of the filing of the Complaint.

(*Id.* at PageID # 254). Chenault also requests that the Court issue an order equitably tolling the statute of limitations for the putative collective members as of the date of filing the Complaint. Finally, Chenault requests that Defendants be required to produce the names, last known mailing addresses, last known telephone numbers, last known email addresses, last four digits of the social security numbers, work locations, and dates of employment for each collective member. Defendants oppose Chenault's motion. (Doc. No. 50).

2

## II. STANDARD OF REVIEW

A collective action hinges on "employees receiving accurate and timely notice concerning [its] pendency ... so that they can make informed decisions about whether to participate." *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). "[F]or a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023). "That standard requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.* After notice has issued, employees have opted into the collective action, and discovery has continued, the district court determines—not conditionally, but conclusively—whether the collective members are in fact "similarly situated" to the original plaintiffs. *Id.* at 1010-11.

## III. ANALYSIS

**A. Proposed Collective Members**

1. <u>Straight Time FLSA Collective</u>

The parties have stipulated to the conditional certification of Plaintiff's proposed "Straight Time FLSA Collective," which includes all dispatchers employed by Hartwig who were paid their regular hourly rates of pay instead of overtime pay for any hours they may have worked over 40 in any workweek during the three years preceding the date of the filing of the Complaint. (Doc. No. 49 at PageID # 255-256; Doc. No. 50 at PageID # 296). Accordingly, the Court **GRANTS** Chenault's motion for court-authorized notice to the individuals defined in the proposed "Straight Time FLSA Collective."

2. <u>Lunch Break FLSA Collective</u>

    a. <u>Similarly Situated Plaintiffs</u>

Chenault also requests that the Court authorize notice to the Lunch Break FLSA Collective, which includes all hourly employees at Hartwig and McCormick who have worked more than 40 hours in a week, have had a lunch period automatically deducted from their hours worked when they did not take a lunch period, and were paid regular hourly rates instead of overtime. Chenault contends that she is similarly situated to the putative members of the Lunch Break FLSA Collective because they each worked at McCormick or Hartwig during a discrete period, were nonexempt employees paid on an hourly basis, had similar duties related to monitoring the progress of trucks and maintaining communications with truck drivers, were subject to Defendants' policy of automatically deducting time for a meal period, and allegedly were not paid overtime during weeks in which they worked more than 40 hours. Chenault submitted declarations from herself and an opt-in plaintiff stating that Defendants automatically deducted 30 minutes for a lunch break and that the employees did not take a lunch break, were not compensated for that time, and the automatic deduction policy applied to all employees. (Doc. No. 49 at PageID# 261).

Defendants contend that Chenault is not similarly situated to members of the proposed Lunch Break FLSA Collective because she cannot identify a common policy of Defendants that violated the FLSA, she has not sufficiently alleged common theories of Defendants' statutory violations, and each potential opt-in plaintiff's claim would require consideration of individualized issues of liability and damages. Defendants also argue that if the Court finds that Chenault has established that she is similarly situated to the proposed collective members, the proposed Lunch Break Collective should be limited to only dispatchers and lead dispatchers. The Court disagrees.

4

"Whether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were." *Clark*, 68 F.4th at 1010. The Sixth Circuit considers the following factors to determine whether collection action members are similarly situated: "(1) the 'factual and employment settings of the individual[] plaintiffs'; (2) 'the different defenses to which the plaintiffs may be subject on an individual basis'; and (3) 'the degree of fairness and procedural impact of certifying the action as a collective action.'" *Isaacs v. Landmark Recovery of Louisville, LLC*, No. 3:23-CV-00210, 2023 WL 6096730, at *10 (M.D. Tenn. Sept. 18, 2023) (citing *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017)). Further, "Plaintiffs are similarly situated if they can demonstrate that they suffered from 'a single, FLSA-violating policy' instituted by the employer defendant, or if their 'claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.'" *Clark*, 68 F.4th at 1010 (internal citations omitted).

The Court finds that Chenault has provided facts sufficient to demonstrate that she is similarly situated to the proposed collective members by providing facts that they had similar duties relating to monitoring the progress of trucks and maintaining communications with truck drivers, were nonexempt employees paid on an hourly basis, and were all subject to Defendants' policy of automatic meal deduction time. Accordingly, the Court finds that Chenault has provided facts sufficient to warrant conditional certification at this stage.

b. Claim Preclusion

Defendants also argue that McCormick was a party to a collective action for unpaid overtime wages in 2021 in the case *Keator v. McCormick Trucking, Inc. et al*, No. 3:21-CV-00605,

2021 WL 8693636 (M.D. Tenn. 2021), and that claim preclusion applies to bar any McCormick employees who opted-in to *Keator* from inclusion in Chenault's proposed collective.

"Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006) (internal citation omitted). "Claim preclusion bars not only relitigating a claim previously adjudicated, it also bars litigating a claim or defense that should have been raised, but was not, in the prior suit." *Notredan, LLC v. Old Republic Exchange Facilitator Co.*, 875 F. Supp.2d 780, 786 (W.D. Tenn. June 21, 2012) (internal citation omitted). "The central purpose of claim preclusion is to prevent the relitigating of issues that were or could have been raised in [a prior] action." *Mitchell v. Chapman*, 343 F.3d 811, 824 (6th Cir. 2003) (internal citation omitted). When determining whether a subsequent action is barred by claim preclusion, courts consider the following elements: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Rawe*, 462 F.3d at 528.

Here, the Court finds that McCormick employees who opted-in to *Keaton* could have brought claims related to unpaid overtime wages in violation of the FLSA in that action. Accordingly, the Court finds that claim preclusion applies to claims for overtime wages brought by any McCormick employee who opted-in to the collective in *Keator* and should be excluded from Chenault's proposed collective.

c. <u>Integrated Enterprise</u>

Chenault also argues that the Court should find that McCormick and Hartwig are an integrated enterprise. In support, Chenault contends that Defendants outsource human recourses functions to the same third party, Hartwig's president regularly works out of McCormick's office, the individual who serves as Hartwig's secretary, treasurer, and director is also the president of McCormick, and the owner of McCormick jointly owns Hartwig with another individual.

In response, Defendants contend that McCormick was not Chenault's employer, that Defendants do not have significantly interrelated operations, do not have centralized control of labor relations and personnel, do not have common management, and do not have substantially common ownership or financial control. (Doc. No. 50 at PageID # 301-304). In support of their argument, Defendants argue that the companies are based in different states, operate in different regions, have separate bank accounts, own their own equipment, and have different timekeeping procedures. Defendants also allege that Hartwig and McCormick each hire their own employees and do not have the authority to make employment decisions regarding the other company's employees. Defendants acknowledge that the same individual serves as president of McCormick and secretary, treasurer, and director of Hartwig, but contends that each company has its own management staff and that the shared administrative staff is not managerial. Defendants state that each company's ownership operates independently of the other and that each company makes independent financial decisions.

The Sixth Circuit considers the following factors when determining if two entities are a single employer: "(1) common ownership, (2) common management, (3) centralized control of labor relations, and (4) interrelation of operations." *Nat'l Lab. Rels. Bd. v. Bannum Place of Saginaw, LLC*, 97 F.4th 351, 359 (6th Cir. 2024) (internal citation omitted). It is undisputed that

7

the secretary, treasurer, and director of Hartwig is also the president of McCormick. Further, the parties agree that Defendants outsource human resources functions to the same company and Defendants acknowledge that they "share limited administrative functions." (Doc. No. 50 at PAgeID # 302). The parties also agree that the president of Hartwig has worked out of McCormick's office for an extended period of time. Accordingly, the Court finds that Chenault has provided facts sufficient to show that Defendants are an integrated enterprise for purposes of conditionally certifying the proposed collective.

**B. Plaintiffs' Proposed Notice**

Chenault also seeks an order requiring Defendants to provide the names, last known mailing addresses, last known telephone numbers, last known email addresses, last four digits of the social security numbers, work locations, and dates of employment for each potential collective member. In response, Defendants argue that Chenault fails to address the methods by which notice should be sent and has waived arguments regarding the form and procedure of the notice. Defendants also argue that notice should be distributed via U.S. mail only and that Chenault's counsel may not initiate contact with potential collective members outside of the formal mailed notice. In her reply, Chenault states that courts have routinely approved notification through regular mail and email. The Court agrees and finds that Chenault's request for the email addresses of potential collective members is sufficient to show that Chenault sought to send notice via mail and email.

The Court further finds that Chenault's proposed notice (Doc. No. 49-1) appears to be "timely, accurate, and informative," as required. *Hoffmann–La Roche Inc.*, 493 U.S. 165 at 172. Chenault's proposed notice clearly informs putative collective members of their rights and how they can elect to participate in the action. The notice provides notice of the pendency of the action

and accurately describes Chenault's legal claims. The notice also accurately states that retaliation for participation in an FLSA action is prohibited by law. *See* 29 U.S.C. § 215(a)(3) (anti-retaliation provision).

Defendants contend that they should not be required to provide the email addresses, last four digits of the social security numbers, work locations, or dates of employment because of privacy concerns. The Court finds that it is reasonable for Defendants to provide the names, last known mailing addresses, last known telephone numbers, last known email addresses, work locations, and dates of employment for each potential collective member. However, the Court finds that Chenault has failed to establish grounds warranting disclosure of social security numbers for each potential collective member and, in the interest of privacy, the Court finds it is unnecessary for Defendants to disclose social security numbers.

Accordingly, the Court approves Chenault's proposed notice. Further, the Court approves the notice as to notice via mail and e-mail. Within 14 days of the Court's order, Defendants must provide to Chenault's counsel an Excel spreadsheet containing the following information for each potential collective member: names, last known mailing addresses, last known telephone numbers, last known email addresses, work locations, and dates of employment.

**C. Equitable Tolling**

Chenault also requests that the Court equitably toll the statute of limitations for the putative collective members as of the date of filing the Complaint. In response, Defendants argue that Chenault waived the equitable tolling argument by not previously moving for it in Chenault's previously-filed motion for conditional collective action certification (Doc. No. 29).[1] Defendants

---

[1] Chenault filed her first motion for conditional collective action certification (Doc. No. 29) before the Sixth Circuit Court of Appeals issued its decision in *Clark v. A&L Homecare and Training Center*, Case Nos. 22-301 and 22-302, 2023 WL 3559657 (6th Cir. May 19, 2023). Accordingly, the Court denied

9

also argue that Chenault created unnecessary delay by engaging in discovery for several months after the Court denied her first motion for certification.

"Equitable tolling is an extraordinary remedy that is sparingly applied and concerns cases involving extraordinary circumstances." *Kutzback v. LMS Intellibound, LLC*, 233 F. Supp. 3d 623, 628 (W.D. Tenn. 2017) (internal citation omitted). "Because delays during the certification process often constitute extraordinary circumstances beyond plaintiffs' control, courts routinely authorize equitable tolling during the opt-in period." *Carlos Gomez v. D&M Bolanos Drywall, LLC,* No. 2:23-CV-02334, 2024 WL 2806479, at *3 (W.D. Tenn. May 31, 2024). When determining whether equitable tolling is justified, the Sixth Circuit considers: "1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness [in] remaining ignorant of the particular legal requirement." *Townsend v. Soc. Sec. Admin.,* 486 F.3d 127, 132 (6th Cir. 2007) (internal citation omitted).

With regard to the first factor, "courts evaluate whether potential plaintiffs have actual notice of a pending collective action, rather than whether they have notice merely of the facts and circumstances giving rise to the FLSA claims." *Gomez,* 2024 WL 2806479, at *4 (internal citations omitted). Here, neither party has demonstrated that the potential collective members have actual notice of the pending action.

With regard to the second factor, "opt-in plaintiffs have constructive notice of a pending suit when they have 'knowledge that one using reasonable care or diligence should have.'" *Gomez,* 2024 WL 2806479, at *4 (internal citations omitted). Here, neither party has established that the potential collective members have constructive notice of the action.

---

Chenault's motion without prejudice to refiling an appropriate motion for notice to potential plaintiffs based on the legal standard set forth in *Clark*. (Doc. No. 40).

With regard to the third factor, "potential plaintiffs are not expected to exercise any diligence in pursuing their claims until they have been provided notice." *Gomez,* 2024 WL 2806479, at *4 (internal citations omitted). Chenault filed her first motion for conditional certification on February 3, 2023. (Doc. No. 29). Chenault contends that at the Court's request, the parties engaged in additional discovery and she did not receive additional discovery responses from Defendants until November 21, 2023. Chenault filed the pending motion on January 5, 2024. The Court finds that Chenault re-filed her motion for conditional certification promptly and has diligently pursued her claims against Defendants.

Further, with respect to the fourth factor "courts have found that defendants were not prejudiced by the tolling of the statute of limitations where they were on notice of the potential scope of their liability." *Gomez,* 2024 WL 2806479, at *4 (internal citations omitted). In the Complaint, Chenault alleged that she intended to represent:

> [A]ll hourly employees (other than drivers, driver's helpers, loaders, or mechanics whose duties affect the safety of operation of motor vehicles in transportation on public highways in interstate or foreign commerce) who have worked more than 40 hours in a week and have not received payment at a rate of one and a half times their regular rate for hours worked in excess of 40 hours in a week [and] all hourly employees (other than drivers, driver's helpers, loaders, or mechanics whose duties affect the safety of operation of motor vehicles in transportation on public highways in interstate or foreign commerce) who have worked more than 40 hours in a week, have had a lunch period automatically deducted from their hours worked when they did not take a lunch period, and have not received payment at a rate of one and a half times their regular rate for all hours worked in excess of 40 hours in a week, including those hours improperly deducted.

(Doc. No. 1 at PageID # 2). Additionally, "as the keeper of the employment records, [Defendants are] presumably aware of the size of the potential Plaintiff pool and has had time to calculate the possible liability posed by the litigation." *Gomez,* 2024 WL 2806479, at *4 (internal citation omitted).

Further, "potential plaintiffs' ignorance of their legal requirements is excused as reasonable if they have not yet received notice of the pending action." *Gomez,* 2024 WL 2806479, at *5 (internal citations omitted). Here, potential collective members have not yet received notice of the pending action.

The Court finds that the above factors weigh in favor of equitably tolling the statute of limitations, and, accordingly, Chenault's request is **GRANTED**. The statute of limitations for the putative collective is tolled as of the date this action was filed.

## IV. CONCLUSION

For the reasons stated above, Chenault's Motion For Court-Supervised Notice to Potential Plaintiffs (Doc. No. 49) will be **GRANTED** in part and **DENIED** in part.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE